Good morning. May it please the Court, RAL basis for the petitioners Domingo Uribe Sanchez and Ana Anacleto. I'd like to reserve two minutes for rebuttal. The main issue in this case is the BIA's finding and the immigration judge's finding as to continuous presence. Both the IG and the immigration judge found that the petitioners had not met the continuous presence requirement, even though they testified that they had entered in 1989 and the NTA wasn't served until 2000. They have the burden of proof on that question. They have the burden of proof. With respect to his testimony, it seemed that he was a little just uncertain about it. At one point he said, I was 27 and then he said, no, I was 29. Even assuming that his testimony alone could otherwise be sufficient without any other documents or testimony, were they required to find that he had entered in 1989 on this record? Well, he did seem like he didn't remember some of the details around the time that he entered. With regard to his age when he entered, it looked like when you were reading the record that he misspoke, that he got nervous and he misspoke. He said he was 29, he said he was 27. He said he was both. It was like he was trying to remember when he was sitting in court. What happened was he testified that he entered in June and July of 89, so there was a one-month discrepancy. His wife testified that they entered in June of 89, and they testified that they entered together. Now, the issue of exactly when they entered the month is really not relevant. No, it isn't, but if he entered when he was 29 and not 27, then he, then it would have been. Right, but he didn't, he said that he entered when he was 27, and then he said he entered when he was 29. He was confused as to when he entered in terms of his age. He knew he entered in 89, he just didn't remember how old he was when he entered. And he said several times on the record that he was nervous. So that by itself, I think, is not enough to say that his testimony wasn't valid. There were other things in his testimony that helped. What level of education does he have? Fifth grade. Fifth grade level of education. And I'd like to point out, he had no criminal records, so this may have been his very first time in court. He was very nervous. He said it several times. And the judge was making hostile remarks to him, which obviously made him more nervous. He said that during the hearing while he was making the comments. I have sort of a more theoretical question for you. A number of our cases in the asylum context say that a person's testimony alone is sufficient to carry the burden of proof if they're credible. And part of the rationale for that is that it's unrealistic to expect people to get documents from Sri Lanka or wherever they came from. That rationale doesn't apply when the issue is whether they're in the United States, because those documents, whether it be a pay stub or a rental agreement or a person coming in and saying, I've known them, is much easier to get. So do we follow the same rule about their testimony alone being sufficient? Not do we follow the same rule. Should we require the same of the agency in this kind of case? I think that when you're talking about someone who entered the United States illegally over ten years ago and you're looking for documentation, I think it's hard sometimes to provide the documentation, unless you're working legally, you have, you know, pay stubs. If you're being paid cash, you know, and you're sort of underground, I think it's very hard to find documentation in certain situations. It's hard to find a person to come in? Well, someone did come in. They did have a witness come in. Who only had a small slice of that time, though. Well, he met them in 1989. He said he met them in 1989 when they, and they entered in 89, and that gives them the ten years. Well, only if they're here continuously, but he didn't know if they were here. He said that he saw them every, at least once a year, more than once a year for the period of time, I mean, from the time they entered until the testimony. He said that he had continued to see them. They were family friends. But the issue that the judge, the issue that the BIA and the judge were mentioning was when they entered, whether they did enter in 89. It seemed like they made a more global observation that the testimony was vague and inconsistent, not just on the entry date, but just generally. You're correct. They did say that, but they, when they went to specifics, they really talked about the entry date, and they also said they were vague about where they lived when they came, although their testimony is very specific. They lived with the brother for a few months. They said the street he lived on, the city he lived in. He lived in Linwood on Torson Street. They lived with him, and then they lived somewhere else. They gave the exact address, the exact city, who they lived with, how long they lived. But they said they were vague as to that. They didn't make a credibility finding. They just said that if you look at everything your clients presented, it wasn't quite enough to paint a, to meet their burden of proof. It just didn't quite get there because there was vagueness and inconsistency overall, plus a lack of documentation. Is that a fair characterization of what they did? They did not make a negative credibility determination, but I think that finding that it was vague and inconsistent, I mean, I think that that's actually not a fair characterization of all of the testimony. The inconsistency, to the extent that I could see it, was really his flipping back and forth as to whether he was 27 or 29. The reason I ask the question about his level of education, if somebody's asking me how old was I in 1989, I've got to do the math in my head. I mean, in 1989, I could have told you. Right. But if you ask me how old I was in 1989, I've got to subtract my birthday from 89. And maybe he was going to get that right and maybe not. Right. Right, plus he was nervous. I've got another question, though. If we were to agree with you and to hold that there's enough here to compel a finding that they were here for the 10 years, the next step is hardship. The IJ found against your clients on hardship. The BIA didn't reach that question. At least as I read the record, the only hardship is that they've got one American child, and our cases are pretty unpromising in that area. You're right. However, the immigration judge did not have the proper standard at the time that he made the decision. And he did create his own standard. The standards that came out by the BIA, Inrei Monreal and Inrei Aguinalda, they came out after he made the decision. And we don't know because he articulated his own standard. And we don't know had he used another standard. It's still an extreme and unusual hardship. It is. But maybe there would have been something else he could have asked them or maybe they would have – you don't know how he would have analyzed it if he had the correct standard. They at least had the right – They made their record. They made their record. And on this record, applying the correct standard to follow up on Judge Fletcher's question, is there even the slightest possibility that they can meet the standard? You know, I think there is a possibility because what he didn't do and what you're supposed to do is look at it all in the aggregate. And it was economic, educational, medical hardships. I mean, they don't have any medical problems but the fact that they could not get the child health care in Mexico. There's a possibility that in the aggregate they could have found hardship. I mean, at least they deserve the chance to have the proper standard. It's such a high standard. But at least they deserve – they have the right to have the proper standard applied to their case. We have about a minute and a half. Okay. I'll reserve for rebuttal. Thank you. Thank you. We'll hear from the government. Good morning, Your Honors. May it please the Court. My name is Song Park for the Attorney General. In order for the Petitioners to merit grant of cancellation of removal in this case, they must demonstrate, among other things, that they have resided in the United States for 10 – for a period of 10 continuous years physically present in the United States. Because the substantial evidence in the record does not support that finding, they are statutorily ineligible for this form of relief and this Court should deny the petition for review. If we were to take away the waffling about whether he was 27 or 29, is there enough evidence? The government's position is no because in addition to the waffling and the age, there was also testimony given regarding the specific date as to when he came in. He initially testified it was July 1989. And then there was a question about him celebrating his birthday in Mexico in August of 1989. And then he testified after that that he entered 7 to 8 months after his birthday. Yeah, I read that testimony. I mean, after which birthday? Maybe it was after his 1988 birthday. And the I.J. was bullying him, which troubles me. Once you start – once you get an I.J. who's bullying, as this I.J. was, and you get a witness who's obviously nervous, who starts to have trouble with the testimony, the system is basically broken down. It's not your fault, but I have trouble with these cases when the I.J. has been abusive. Because I don't know what I'm supposed to think when I get a witness who starts to have trouble, whether it's because the witness doesn't know or because the witness is getting bullied. Well, I think there's a couple of points to that concern that you have, Your Honor. The first being that the Petitioners in this case were – I'm sorry, had counsel. They were represented before the Court. And even their own counsel's testimony was that there was a substantial lack of evidence regarding the period of time between when they claimed to have alleged to have come in between that and in particular 1984. You're saying the counsel's testimony? The counsel didn't testify. Well, the counsel didn't testify. But he himself, there is – in the transcript, there is some concern. He notes, yes, Your Honor, there is concern regarding this period of time and the lack of corroborating evidence regarding that period. And where is that then? Maybe if I'm – if you're telling me that there's a concession, I guess I better look at it. That's on page 99 of the administrative record. I have considerably more difficulty with your case regarding the wife, though. She didn't do any laughing. She didn't seem to have any uncertainty. She simply said June of 89. And nothing really contradicts that. So what do we make of that? I think the Board's concern regarding Mrs. Urube's testimony here was not just that perhaps she was unable to establish she came in in 1989, but that in addition to that, that there was not enough evidence to substantiate that they had been continuously present for 10 years. Because the statute requires not only that they came in at a certain time, but also that they be able to demonstrate that they've been present physically in the United States for 10 continuous years. They both said that. The only real criticism the I.J. had is they didn't have any documents, and that's not a legal requirement. Was there any inconsistency in either petitioner's testimony about continuous presence? I didn't see any. I don't know that there was necessarily a specific inconsistency, at least noted by the Board. But I think the Board was troubled and very concerned about the fact that there was a sort of minimal and vague testimony that had been presented. And so in order to bolster that, what they needed was additional corroborating evidence in the form of documentation. And out of those 10 years that they were required to show that they were physically present here, I believe the documentation submitted accounts for maybe about five years of that period. So there's actually a five-year period in which there's been no documentation submitted whatsoever to indicate that they've been present. But the testimony was not deemed incredible. That's correct, Your Honor. We have to take it as true for purposes of our analysis of the record. And she said that they were here the whole time. That's correct, Your Honor. But, again, I think what the Board was concerned was with the fact that there wasn't enough testimony detailing, well, we lived here at this period of time, or I worked here for this period of time. I think they were just troubled by the minimal and sort of vague testimony that was provided by both Petitioners in this case and wanted something more to bolster to be a little more confident of the fact that they had been present here for the 10 years that was required by statute. Now, I'm on page 99. This may or may not have been the page you actually wanted to send me to. If I could have the Court's indulgence for one second. While there is testimony, well, there is a statement here from the Petitioners' Counsel, the Immigration Judge, regarding the addresses as to where they had been residing. It indicates it's been very poorly put together regarding where they lived and sort of consistently laying out, here's where they lived at this period of time and then moved to here and then moved to here, at which point the Petitioners' Counsel responds, I agree, Judge. I don't have the addresses. Wait a minute. Here's what the counsel is agreeing to. The judge says, you know, this all should have been in his application. Very poorly put together, I must say. I agree, Judge. Now, the application is different from the testimony that's coming in now. Applications, as we know, are often poorly put together. Right. I don't regard this as a concession overall that the evidence is weak. Now, the evidence may or may not be weak, but I don't see this as a concession. But I think in addition to Your Honor's concern regarding the way that the ambiance of the particular hearing may have been, I think it's important to point out that merely the harshness of tone in the immigration judge's questioning of the Petitioner does not necessarily indicate that there has been some kind of due process violation or that he didn't receive a fair hearing. There's been no indication from Petitioner or Petitioners' Counsel now that here's additional evidence I would have testified to or here's additional proof I would have given you had I been given the chance or had the immigration judge not had the  There's no due process argument that's been made here. As you know, of course, although it's rare that we should do so, there have been two reported cases in recent years with respect to this particular I.J. as to his, I'll say, bullying. We can use various words. Are we allowed to take it into consideration as we evaluate the testimony? That is to say, give some slack to the person testifying when it appears that it may be confused or having trouble or the person may be having trouble in response to what the judge is doing. That's a different question from whether there's been a due process violation. Right. And I think certainly Your Honors are free to consider everything on the record,  including what is both the board and the immigration judge noted to be a substantial lack of corroborating evidence to bolster what was some vague, minimal, and in particularly the case of the male petitioner, to be some inconsistent testimony. Do you have any comment on the hardship showing? Well, I think in this case the board did not make a finding as to specific to hardship, but I think Your Honors were correct in noting that the immigration judge did note when he considered the hardship issue that it was, it did not rise to the level as provided by the act. Well, but assuming that the IJ applied the wrong standard, what is your thought about how the showing would pass the current standard? And if we get to that point, in other words, if we find that the BIA was wrong as to the eligibility, if we get to the next step, how ought we to treat that hardship issue? Well, first, I think the government would disagree with the petitioner's position that the immigration judge applied the wrong standard. I think the immigration judge applied the issue of hardship to the exceptional and unusual circumstances that exceptional hardship that's been outlined by the statute. And it is, as Your Honors noted, an extremely high standard. So that would be answer one. I think answer two is in the event Your Honors would find that there's been some kind of error or there's been some kind of a problem with the hardship determination, then that would be something that needs to be remanded and put first before the agency for them to determine. And then if there's any further questions at that point, it would then again be appealed to this Court. Okay. Thank you. Are there any? There's no further questions? I don't believe so. Thank you very much. Thank you, Your Honors. Ms. Basis, you have some rebuttal time left. I just wanted to raise a couple of points about the immigration judge's bullying. First of all, there was a due process argument in the opening brief about him foregoing the role of a neutral, impartial judge in the questioning. And there were some problems, there's some big concerns with that. One is if there's not enough evidence in the record to support his finding and he's bullying them and foregoing the role of a neutral judge, then you have to wonder about his decision. What is the decision based on if there isn't enough in the record to support the decision? So what I'm saying is, and I said this in the opening brief, his decision is suspect when you add the bullying to it and that there's not enough evidence to support it. I made a mistake. I looked at your brief right now. It's right there loud and clear, full page plus a little bit. Okay. The other issue is that they were found credible, especially the female petitioner. And the judge and the INS attorney asked a lot of questions about when they first entered the country, but they really didn't ask a lot of questions about the continuous presence. And if they were going to say that they were vague and inconsistent on that, they should have asked them and then given them a chance to respond to that if that was going to be their problem. Counsel, I just wanted to follow up one more time on the hardship. Assuming that PIJ did not apply the correct standard, why can't we look at the record from the hearing and apply the correct standard ourselves? Because, I mean, we can do that, but also there was bullying. He did forego his role of being neutral, and you don't know what else could have been said on the record. It's not a complete record once he was not neutral. Well, the real question, it seems to me, is whether it would be remanded to the BIA for reconsideration on the current record, assuming we get to this point in the analysis, or whether we return it to the BIA with instructions to return it to an IJ for further evidence, because under Ventura, we can't do it ourselves. So is it your argument is that it has to go all the way back to an immigration judge for a further hearing? I think that would be the fairer result, because then they would get an impartial judge. Because if you're not to buy into your due process argument as well to get it all the way back for a new hearing. I don't know the answer to this question. If we were to remand to the BIA, and if the BIA were to remand to the IJ, is this same IJ now sitting? He's not. He's retired. I see. Okay. Any further questions? Thank you very much. Thank you. We appreciate the arguments from both of you, and the case just argued is submitted.
judges: Graber, W Fletcher, Fogel